IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KELVIN MILES,

      Petitioner,

v.                              CASE NO. 1:15-cv-9-WTH-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  In his Petition,

Petitioner raises five grounds for relief, all of which involve claims of trial

court error. (*Id.*) Respondent filed a response, ECF No. 18, along with

relevant portions of the state-court record. (ECF Nos. 18-1–18-6 ("Ex.").[1])

Petitioner then filed a reply. (ECF No. 43.) Upon due consideration of the

Petition, the Response, the state-court record, and the Reply, the

undersigned recommends that the Petition be denied.[2]

---

[1] Where an exhibit is separately paginated, the pinpoint citations to the exhibits will be the lettered exhibit followed by the appropriate page number(s). If an exhibit is not separately paginated, the identification used will be the ECF designation at the top of the page followed by the corresponding page number.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules

## Summary of State-Court Proceedings

In July 2008 Petitioner was charged with sexual battery by use or threat of deadly weapon, two counts of robbery with a deadly weapon, and kidnaping. (Ex. A at 3–4.) In May 2009, an amended information was filed, charging Petitioner with sexual battery (by use or threat of deadly weapon) and kidnaping (by use or threat of deadly weapon). (*Id.* at 53–54.)

After a jury trial in November 2009, Petitioner was found guilty as charged in the amended information. (*Id.* at 139.) Then in December 2009, Petitioner was sentenced to two consecutive life sentences. (*Id.* at 171–74.) Petitioner's motion for a new trial was denied. (*Id.* at 175.)

Petitioner filed a direct appeal to the First District Court of Appeal ("First DCA"). (Ex. Z.) The First DCA reversed his conviction and sentence and remanded the case for a new trial based on the trial court's error in denying Petitioner's motion to suppress statements he made to police officers after he invoked his right to remain silent. (Ex. CC.) The First DCA did not find any error with regard to the denial of Petitioner's motion in limine or in the court's imposition of a sentence. (*Id.*) The State filed a motion for rehearing, which the First DCA denied. (Exs. DD, FF.) The mandate followed on May 20, 2011. (Ex. GG.)

---

Governing Habeas Corpus Petitions Under Section 2254.
*Case No: 1:15-cv-9-WTH-GRJ*

The judgment and sentence were vacated and set aside in August 2011. (Ex. C at 511.) Upon retrial in March 2012, Petitioner was found guilty as charged in the amended information. (Ex. D at 694; Ex. W at 746.) He was then sentenced again to two life sentences on March 29, 2012. (Ex. D at 707–10; Ex. W at 787.)

On October 23, 2012, Petitioner filed a motion to correct his sentence. (Ex. HH.) This motion was denied on November 14, 2012. (Ex. II.) Petitioner then appealed his conviction and sentence to the First DCA. (Ex. JJ.) The First DCA *per curiam* affirmed without written opinion on October 3, 2013, and the mandate followed on October 21, 2013. (Ex. MM.)

Petitioner then filed another motion to correct his sentence in June 2014. (Ex. NN at 1–23.) The court denied this motion on June 18, 2014, finding that his claims were barred by collateral estoppel, *res judicata*, and the law of the case. (Ex. NN at 25–27.) Petitioner appealed, and the First DCA *per curiam* affirmed without opinion on October 13, 2014. The mandate followed on November 10, 2014. (Ex. OO.)

Petitioner submitted the instant habeas petition to prison officials for mailing on January 16, 2015. (ECF No. 1.)

Petitioner then filed a third motion to correct his sentence on March

20, 2015. (Ex. PP.) The trial court denied the motion on June 9, 2015,

again stating it was barred by collateral estoppel, *res judicata*, and the law

of the case. (Ex. QQ.) Petitioner did not appeal.

On October 6, 2015, he filed a motion for postconviction relief,

alleging multiple claims of ineffective assistance of trial counsel. (Ex. RR.)

As of the date Respondent responded to his petition, the trial court had not

ruled on this motion, although Respondent represents it was filed well after

the two-year time limit for filing motions for postconviction relief.

## Section 2254 Standard of Review

The role of a federal habeas court when reviewing a state prisoner's

application pursuant to 28 U.S.C. § 2254 is limited. *Williams v. Taylor*, 529

U.S. 362, 403–04 (2000). Under section 2254(a), federal courts "shall

entertain an application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgement of a State court only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the

United States."

Additionally, federal courts must give deference to state court

adjudications unless the state court's adjudication of the claim is "contrary

to, or involved an unreasonable application of, clearly established Federal

law, as determined  by  the  Supreme  Court  of  the  United  States." 28

U.S.C.  § 2254(d)(1).

With regard to factual findings, under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); 28 U.S.C. § 2254(e)(1).  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, as mentioned above, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of

the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003); *see also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006).

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1182 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Jones*, 753 F.3d at 1182 (alteration in original) (quoting *Williams*, 529 U.S. at 413).

The Supreme Court has interpreted § 2254(d) as requiring that "a

state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S.Ct. at 1702. In other words, Petitioner must establish that no fairminded jurist would have reached the Florida court's conclusion. *See Richter*, 562 U.S. at 102–03; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact-finding only to the extent that the state court's ultimate conclusion relied on it. 633 F.3d at 1292. A federal habeas court can consider the full record before it to answer "the only question" that matters: "whether the state court's determination [was] objectively unreasonable." *Id.* at 1290.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion. 28

U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must fairly present the claim

in each appropriate state court, thereby affording the state courts a

meaningful "opportunity to pass upon and correct alleged violations of its

prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364,

365 (1995)).

## DISCUSSION

## Ground One: The state court did not err in allowing the prosecutor to tell potential jurors that DNA evidence had been destroyed.

Petitioner contends that the trial court erred in allowing the

prosecutor to tell potential jurors that DNA evidence had been destroyed

and then to inquire as to whether this would create a feeling of unfairness

in their minds. Petitioner says that this amounted to "pre-trying" the case and violated his right to due process. (ECF No. 1 at 4.)

Petitioner raised this issue on direct appeal, and the First DCA affirmed *per curiam* without opinion. (Exs. JJ, MM.) The Court finds that the First DCA's decision denying this claim was not contrary to or an unreasonable application of federal law that has been clearly established by the Supreme Court.

At the trial in this case, the prosecutor asked the jury venire whether they could remain fair and open-minded as well as listen to all the evidence knowing that some of the DNA evidence in the case had been inadvertently destroyed. (Ex. R at 1379–80.) Petitioner's counsel objected prior to this line of questioning, and the court informed his counsel that "[i]t's very common, through a hypothetical, to ask jurors if they heard certain statements or evidence, if they could not be open-minded, if that would determine their verdict." (*Id.* at 1376.) The prosecutor then simply asked, "Is there anyone who feels, knowing that [evidence had been destroyed and could not be tested again], that that creates in your mind a feeling of such unfairness, that you could not be fair to both sides, or you could not keep an open mind in listening to all the evidence?" (*Id.* at 1380.) He did not ask what their verdict would be based on the destruction of DNA

evidence or anything about how they would decide the case.

Because the prosecutor only inquired as to whether the jury could render an impartial and fair verdict based on all the evidence presented in light of the destruction of DNA evidence, and did not ask how the potential jurors would vote in light of this destruction of evidence, the trial court did not commit any error in allowing such questioning. *See Fennell v. Sec'y, Fla. Dep't of Corr.*, 582 F. App'x 828, 832 (11th Cir. 2014) ("Under Florida law, the test at trial 'for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." (quoting *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)); *see also Bell v. State*, 108 So. 3d 639, 652 (Fla. 2013) (noting that for questioning potential jurors, the "prohibition extends only to 'question[s of] prospective jurors as to the kind of verdict they would render under any given state of facts or circumstances'" (quoting *Smith v. State*, 253 So. 2d 465, 470–71 (Fla. Dist. Ct. App. 1971))).

To grant habeas relief, the Court must find that the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). Because Petitioner cannot show any error by the trial court in

allowing the prosecutor's questioning of potential jurors— and thus cannot

show any violation of his due process rights— the First DCA's rejection of

this claim on appeal was not contrary to or an unreasonable application of

clearly established federal law. Accordingly, Petitioner is not entitled to

federal habeas relief on ground one.[3]

## Ground Two: The state court did not err in denying Petitioner's motion in limine regarding the DNA evidence and witness testimony about that evidence.

Petitioner next contends that the trial court erred in denying his

motion in limine in which he asked the Court to exclude the DNA evidence

and witness testimony pertaining to that evidence. Petitioner says that

because the evidence had been destroyed, this violated his confrontation

rights. (ECF No. 1 at 4.)

Petitioner raised this issue on direct appeal, and the First DCA

affirmed *per curiam* without opinion. (Exs. JJ, MM.) The Court finds that the

First DCA's decision was not contrary to or an unreasonable application of

federal law that has been clearly established by the Supreme Court.

---

[3] In Petitioner's reply, he states that the real issue in ground one is not about the prosecutor's questioning of the venire but instead about his inability to conduct his own independent testing of the DNA evidence that was destroyed. (ECF No. 43 at 6.) This destruction of DNA, however, does not constitute a denial of due process, as he alleges in his reply. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.").

The DNA evidence in this case consisted of four vaginal swabs taken from the victim, which were taken hours after the sexual battery in 1990. The swabs were turned over to the Gainesville Police Department ("GPD"). The testing of one of these swabs in 2003 revealed a mixture of DNA from one female and one male. The Florida Department of Law Enforcement ("FDLE") entered the data into the CODIS database. Then, in April 2005, GPD inadvertently destroyed the remaining three vaginal swabs in addition to other evidence in this case.  In 2008 CODIS alerted FDLE of a match between the DNA from the swab and Petitioner's DNA. (Ex. A at 62–76.)

Petitioner's counsel then moved in limine to exclude the DNA evidence and testimony about it because Petitioner could not confront the evidence against him and because it violated his due process rights. (*Id.*) The trial court judge presiding over Petitioner's first trial denied Petitioner's motion to exclude the DNA evidence, finding that there was no bad faith by the police or prosecution in the case regarding the destruction of evidence, that the actual DNA evidence was only potentially useful to the defense, and that the defendant could question of the validity of the DNA testing and any analysis of the results. (Ex. A at 87–88.) Petitioner filed the same motion in limine prior to his re-trial, and the judge presiding over the second trial also denied the motion in limine based on the law of the case.

(Ex. D at 667–78; Ex R at 1294–99.)

    "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994), because the trial court "has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." *Lynd v. Terry*, 470 F.3d 1308, 1314 (11th Cir. 2006). "However, where the petitioner claims that the state court's evidentiary ruling deprived him of due process, the habeas court asks only whether the error was of such magnitude as to deny the petitioner his right to a fair trial, i.e., whether the error 'was material as regards a critical, highly significant factor.'" *Michel v. McDonough*, No. 4:06-cv-127-MP-AK, 2008 WL 1766529, at *5 (N.D. Fla. Apr. 11, 2008) (quoting *Alderman*, 22 F.3d at 1555).

    In the case, Petitioner has failed to show that the trial court abused its discretion in admitting the DNA test results and testimony regarding those results. The trial court expressly denied the motion in limine because it found no bad faith on the part of the prosecution or the police in the destruction of the DNA evidence. Petitioner was then provided an opportunity to cross-examine all witnesses regarding the DNA testing, and

he did not challenge the test results obtained.[4] The fact that such testing could not then be replicated on the original DNA swabs taken was not a reason for the trial court to exclude the results obtained.

With regard to the DNA evidence, there is no reason to exclude otherwise admissible DNA results simply because the actual raw material was inadvertently destroyed where there has been no showing of bad faith by the police in the destruction of the evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process."). Accordingly, because Petitioner has failed to show a constitutional violation with regard to the denial of his motion in limine, the Court is not permitted to second guess the trial court's evidentiary ruling.

To grant habeas relief, the Court must find that the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). Because Petitioner cannot show that the trial court erred or abused its discretion in denying his motion in limine, the First DCA's

---

[4] In Petitioner's reply he asserts that he could not challenge this testing because he could not perform his own testing. (ECF No. 43 at 10.) Yet there are plenty of ways to challenge the results of DNA testing without condcuting testing, such as cross-examining witnesses who performed the testing about their methods and procedures..

rejection of this claim on appeal was not contrary to or an unreasonable

application of clearly established federal law. Accordingly, Petitioner is not

entitled to federal habeas relief on ground two.

**Ground Three: Petitioner's claim that the state court erred in scoring 40 points for penetration in calculating his guideline sentence where there was no evidence of a physical injury is a state law claim that does not provide a basis for federal habeas relief.**

Petitioner next contends that the trial court erred in applying 40

points for penetration to Petitioner's guidelines sentence calculation when

there was no evidence of a physical injury. He argues that any increase in

a guidelines calculation must be supported by competent and substantial

evidence. Plaintiff also says that this violated his due process and equal

protection rights. (ECF No. 1 at 5.)

Petitioner first raised this claim in his Rule 3.800(b) motion. (Ex. HH.)

In denying the motion, the trial court found that even if the sentence score

sheet has not been properly calculated, his sentence would have been the

same. (Ex. II.) The trial court cited *Sanders v. State*, 35 So. 3d 864,

870–71 (Fla. 2010), which provides that an error in the sentencing

calculation is harmless if the trial court would have imposed the same

sentence regardless. (*Id.*) Petitioner then raised this issue on direct appeal,

and the First DCA *per curiam* affirmed without opinion. (Exs. JJ, MM.)

Regardless of proper sentence calculation, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)). This is because "a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)).

The calculation of state sentencing guidelines is an issue of state law that does not provide a basis for federal habeas relief. As the Eleventh Circuit has said, "federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  Petitioner's conclusory argument that the sentence calculation violated his due process and equal protection rights does not transform his state law claim into a federal one. *See id.* ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely 'couched

in terms of equal protection and due process.'").

Because Petitioner's claim regarding the calculation of his sentence is based exclusively on state law, Petitioner is not entitled to relief on ground three.[5] *See Douglas v. Sec'y, Dep't of Corr.*, No. 1:10-cv-5-MP-GRJ, 2013 WL 593737, at *5 (N.D. Fla. Jan. 17, 2013) ("Petitioner argues that under Florida sentencing law in place at the time of his original sentencing, victim injury points could not be assessed in sexual battery cases based on penetration alone without additional physical injury. This sentencing issue is purely a matter of state law."), *report and recommendation adopted*, 2013 WL 593730 (N.D. Fla. Feb. 15, 2013).

**Ground Four: Petitioner's claim that the state court erred in resentencing Petitioner within the corrected guidelines score range where there was no valid written contemporaneous reasons for departure is a state law claim that does not provide a basis for federal habeas relief.**

Petitioner next contends that the trial court erred in resentencing Petitioner because there was no valid contemporaneously written reasons

---

[5] Petitioner first mentions in his reply that there were violations of *Apprendi* and *Blakely*. He says that any additional sentencing points, such as the 40 points for penetration, were required to be based on specific findings of fact by the jury. (ECF No. 43 at 12–13.) Notably, however, the jury made a specific finding on the verdict form that "[t]he Defendant's sexual organ penetrated the Victim's vagina." (Ex. D at 694.) So it is unclear what Petitioner means by saying there must have been a finding by the jury regarding these points for penetration.

To the extent Petitioner is arguing that he could not have received victim injury points based on the finding of penetration alone without an additional physical injury, this constitutes a purely state law claim as discussed above.

for departure at sentencing. He says that the sentencing guidelines in place at the time required any sentence that departed from the guidelines to be explained in contemporaneous writing. Because this did not happen, Petitioner says his sentence must be reversed for a proper sentencing inside the guidelines range. (ECF No. 1 at 5.)

Petitioner first raised this claim in his Rule 3.800(b) motion. (Ex. HH.) In denying the claim, the state court noted that Petitioner's trial counsel moved the court to have a transcript of its remarks attached to the judgment and sentence in this case. (Ex. II.) That court stated that had Petitioner's counsel not so moved, it would have included its reasons in written form at that time. (*Id.*) Additionally, the trial court noted that Petitioner's counsel was aware of the reasons for departing from the sentencing guidelines, particularly in light of the fact that this was Petitioner's second sentencing and the same reasons for departure were given at each hearing. (*Id.*) Petitioner then raised this issue on direct appeal, and the First DCA *per curiam* affirmed without opinion. (Exs. JJ, MM.)

Regardless of whether it was improper to impose a sentence that departed from the guidelines without providing contemporaneous written findings, this claim again presents a state law claim that does not provide a

basis for federal habeas relief, as discussed above. *See Branan*, 861 F.2d at 1508 ("[F]ederal courts cannot review a state's alleged failure to adhere to its own sentencing procedures."). Petitioner fails to allege any constitutional provision or federal law that was violated by the failure to provide contemporaneous written findings.[6]

Because Petitioner's claim regarding the imposition of his sentence without contemporaneous written findings is based exclusively on state law, Petitioner is not entitled to relief on ground four.

**Ground Five: The state court did not err in departing from the guidelines sentence based on the victim's emotional injury and Petitioner's escalating pattern of criminal activity.**

Petitioner lastly argues that the trial court erred in imposing consecutive life sentences based upon the victim's physical/emotional injury and Petitioner's escalating pattern of criminal activity following the alleged crimes in the instant case. Petitioner says that this was clearly a departure from the law because a jury should have decided the factors pursuant to *Apprendi v. New Jersey* and *Blakely v. Washington*. (ECF No. 1 at 6.)

---

[6] In Petitioner's reply he makes the conclusory allegation that the failure to include these contemporaneous written findings was a violation of his due process rights. (ECF No. 43 at 14.) In light of the facts discussed above, it is clear that Petitioner has failed to actually raise a due process claim and is instead simply challenging the state court's failure to follow its own sentencing procedures.

Petitioner first raised this claim in his Rule 3.800(b) motion. (Ex. HH.) In denying this claim, the court noted that there was competent substantial evidence presented to support the findings of fact regarding the emotional trauma and criminal history, although they were found by the judge and not the jury. (Ex. II.) Specifically, the court found that "[n]o reasonable jury would have found that the victim did not suffer excessive emotional trauma at the hands of Defendant" and that "[c]onsidering Defendant's criminal conduct prior to, during, and immediately after the instant offenses, no reasonable person would have found that Defendant's prior convictions did not constitute an escalating pattern of criminal activity." (*Id.*)

Petitioner then raised this issue on direct appeal, and the First DCA affirmed *per curiam* without opinion. (Exs. JJ, MM.) The Court concludes that the First DCA's decision was not contrary to or an unreasonable application of federal law that has been clearly established by the Supreme Court.

At Petitioner's sentencing hearing following his first trial, the State sought a departure from the guidelines. (Ex. I at 1098–1104.) The State argued that under the law at the time of the offense, the court was permitted to deviate from the guidelines sentence when a preponderance

of the evidence shows that the victim suffered excessive physical or emotional trauma by the defendant. (*Id.* at 1099–1100.) In support, the State referred to the victim's testimony and her victim impact statement, which was admitted into evidence. (*Id.*)

Additionally, the State argued that the court was permitted to depart from the guidelines sentence based on other factors, such as the defendant's criminal history both before and after the crime. (*Id.* at 1100–01.) In support, the State recounted Petitioner's criminal history and presented prior judgments and sentences against Petitioner. (*Id.* at 1079–85, 1100–04.)

When the trial court departed from the guideline sentence at Petitioner's first sentencing hearing, it did so based on significant emotional and physical trauma to the victim as well as Petitioner's extensive and accelerating criminal history. (Ex. I at 1111–12.) And when Petitioner raised this issue on appeal following his first trial, the First DCA found no error in this sentencing decision—reversing and remanding based on a different reason. (Ex. CC.)

After Petitioner's retrial in the underlying case, the parties agreed at sentencing to rely on the evidence regarding emotional injury to the victim used during the first sentencing hearing. (Ex. W at 752.) Again, the State

argued for a departure sentence, stating that "there should be no doubt in any reasonable jury's mind that Ms. Nichols has suffered severe physical and emotional trauma and that it was excessive." (*Id.* at 758–65.) And again, before imposing the sentence, the trial court considered the pain and suffering of the victim as well as Petitioner's escalating pattern of criminal conduct. (*Id.* at 783–85.) The court did note, however, that Petitioner's accelerating criminal history was secondary to the victim's emotional trauma when imposing the departure sentence. (*Id.* at 788–92.)

The court's sentence departure was in accordance with the reason listed in Section 921.001, Florida Statutes (1989).  The victim's testimony and written impact statement constituted substantial evidence to support a finding of significant emotional and physical trauma.[7] (Ex. I at 1067–1115; Ex. W at 782–85.) Petitioner, therefore, cannot show any trial court error in imposing this sentence in accordance with Florida law.

Petitioner claims, however, that the court's reliance on the physical and emotional injury to the victim was improper because the finding was

---

[7] With regard to the victim's emotional injury, the sentencing judge expressly stated, "And I will say first, one of the things that absolutely struck me during the trial was, an incident that was 22 years old, it was just palpably apparent that the pain and suffering was present last week, as it was happening. Twenty-two years old. . . . That is suffering, when 22 years later — and it's not because the victim is an emotional push-over." (Ex. W at 783.) And that was only part of the reason the judge found excessive emotional trauma. (*Id.*)

not made by a jury, in violation of *Apprendi v. New Jersey*, 530 U.S. 466

(2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a

prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." 530 U.S. at 490. Then in *Blakely*, the

Supreme Court found that "the 'statutory maximum' for Apprendi purposes

is the maximum sentence a judge may impose solely on the basis of the

facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at

303; *see also Battle v. Sec'y, Dep't of Corr.*, 339 F. App'x 950, 953–54

(11th Cir. 2009) (discussing the holding in *Blakely* that "the imposition of a

sentencing enhancement, based solely on the sentencing judge's factual

findings, violated the defendant's Sixth Amendment rights because the

facts supporting the findings neither were admitted by the defendant nor

found by a jury." (citing *Blakely*, 542 U.S. at 304–05)).

Yet even if a *Blakely* or *Apprendi* violation occurred, Supreme Court

precedent dictates that alleged *Apprendi* and *Blakely* violations are subject

to harmless error analysis. *See Plasencia v. Sec'y, Fla. Dep't of Corr.*, 606

F. App'x 511, 515 (11th Cir. 2015) ("The *Brecht* harmless-error standard

applies to a *Blakely* challenge raised in a § 2254 petition," and "the more

petitioner-friendly harmless-error standard applie[s] to *Blakely* challenges raised on direct appeal."); *United States v. Nealy*, 232 F.3d 825, 829 (11th Cir. 2000) (finding that any *Apprendi* error is subject to harmless error analysis).

Because the trial court's sentencing determination was based on the victim's testimony and written statement at the first sentencing, which was then adopted after stipulation at the second sentencing, any reasonable jury would have found that the victim suffered from excessive physical or emotional trauma. As a result, Petitioner has failed to show that any *Apprendi* or *Blakely* violation resulted in anything more than harmless error. Because it is reasonable to conclude that any such error was harmless, the state court's decision denying this claim on appeal was not contrary to or an unreasonable application of clearly established federal law.

Further, the emotional injury to the victim was not the only reason the trial court imposed a departure sentence. *See State v. Fant*, 876 So. 2d 645, 646 (Fla. Dist. Ct. App. 2004) ("An appellate court is obliged to uphold a departure sentence if one of the reasons for the departure is valid, even if the remaining departure reasons are invalid." (quoting *State v. Shorter*, 814 So. 2d 1117, 1118 (Fla. Dist. Ct. App. 2002)); Fla. Stat. § 921.001(5) (1989)

("When multiple reasons exist to support a departure from a guidelines sentence, the departure shall be upheld when at least one circumstance or factor justifies the departure regardless of the presence of other circumstances or factors found not to justify departure.").

As discussed above, secondary to this emotional injury, the trial court considered Petitioner's escalating pattern of criminal activity as a reason for a departure sentence.[8] Petitioner's prior judgments and convictions support the departure based upon an escalating pattern of criminal activity. This is a finding a judge could make. The State was not required to prove them to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 244 (2005) ("[W]e reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt."); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (noting that a judge could make findings of fact based on prior convictions). Thus, Petitioner has failed to show anything improper about the sentencing judge's imposition of a departure sentence based on this

---

[8] Specifically, the sentencing judge found, "And if those four crimes that you've laid out – possession, sale, resisting with violence and then robbery – then that is clearly an escalation from one to the next; and then a significant escalation to this one." (Ex. W at 790.)

secondary factor.

Additionally, even if any *Apprendi* or *Blakely* violation occurred with regard to this second factor, Petitioner failed to show that any such error was not harmless. Based on the record evidence regarding Petitioner's criminal history, any reasonable jury would have found that Petitioner exhibited an escalating pattern of criminal conduct. Because it is reasonable to conclude that any such error was harmless, the state court's decision denying this claim on appeal was not contrary to or an unreasonable application of clearly established federal law.

To grant habeas relief, the Court must find that the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). Because Petitioner cannot show any error by the trial court in departing from the guidelines sentence or that any alleged *Apprendi* or *Blakely* error was more than harmless, the First DCA's rejection of this claim on appeal was not contrary to or an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to federal habeas relief on ground five.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## CONCLUSION

Accordingly, for the foregoing reasons, it is respectfully

## RECOMMENDED:

1. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 20th day of February 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.